And our last case this morning is Berkman v. Vanihel. Mr. Brown. Good morning. May it please the court, Russell Brown, I represent Mr. Nathan Berkman on a 2254 petition. The basis of the petition is a confrontation clause issue in Mr. Berkman's state court trial out of the state of Indiana. The confrontation issue revolves around a key state witness by the name of Arlene Timmerman. This issue goes under the AEDPA review for the 2254 D1 and 2254 D2. Mr. Berkman believes that this court should reverse the district court's decision under both D1 and D2 standards. Under the D1 standard is whether or not there was an unreasonable application of clearly established federal law. When we look at the D1 analysis, first, the court of appeals, the Indiana court of appeals, applied the wrong standard of review. When it made its determination of whether or not Ms. Timmerman's testimony should have been read into the jury on his second trial, they analyzed that question using the abuse of discretion standard, which is the Indiana court of appeals standard of review for admission of evidence. Instead of using the de novo standard review, which is the required standard review for a constitution violation. That is clear. Wouldn't that just be an error of state law? No, Your Honor, because the issue is... The standard of review is not set by federal law. State courts use different standards of review for reviewing these sorts of trial court determinations. That is correct, Your Honor, but I guess Mr. Berkman's position is it's clear that the Indiana court of appeals, because of the standard review that they applied, did not address the confrontation clause issue under federal law. And that is, again, it's also clear that they didn't even consider this a constitutional violation. While they cited to it, and they cited to Crawford, and they cited using the confrontation clause as a heading, they didn't address this under a constitutional law standard. If they would have, then they would have, under Indiana law, used a de novo standard of review. They didn't. So it's clear that they didn't even consider this a constitutional issue. Second, under the confrontation clause, it is clear in federal law that it is the state's burden to determine or to prove that a witness is unavailable. Combing through the Indiana court of appeals opinion, there is not one mention of the state's burden to determine that Ms. Timmerman was unavailable. The court of appeals doesn't address it at all. It is clear through federal law that that is required under the confrontation clause, that the state must establish and must prove that the witness is unavailable. The court of appeals never addressed it, never analyzed this issue under the state's burden. Instead, as indicated earlier, they only addressed whether or not the trial court abused its discretion by admitting the testimony. Therefore, under the 2254D1, it was an unreasonable application of clearly established law, which permits this court to do its own analysis of whether or not a confrontation clause violation existed. Additionally, under 2254D2, if the court of appeals decision was based upon unreasonable determination of the facts, here... Before we get to the facts, Mr. Brown, the witness was deemed unavailable, and that's why the trial court let the transcript in. Are you arguing that the court unreasonably applied law about unavailability? And if so, what are you relying on? Because the Supreme Court has had quite a bit of jurisprudence on Sixth Amendment confrontation rights, but it's all been about whether it's testimonial. There really hasn't been a focus on unavailable. So the argument there is, again, it's the state's burden to prove that Ms. Timmerman was unavailable. Looking at the facts, generally the facts of the case, Ms. Timmerman began testifying, indicated that she started taking off the sweater, and when asked by the state's attorney, I'm having an issue. But before we start going down that route, what law did they unreasonably apply? What Supreme Court law about unavailability was unreasonably applied? That they didn't address the state's burden. Okay. So it's the burden, not necessarily how unavailable, has been construed that you're arguing. That is correct, Your Honor. And I understand that it's not necessarily Supreme Court law, but the Burns v. Claussen Seventh Circuit case talks about when analyzing the state's burden that it's a continuing burden, and in that particular case there was a fine. Doesn't it have to be unreasonable application of Supreme Court law? It does. And again, the Supreme Court law is clear that it's the state's burden to prove the witness unavailable. And using that application and that law, the Burns v. Claussen opinion from the Seventh Circuit talks about how that burden is a continuing burden, and that if the state cannot rely upon stale information in finding or in trying to find that the witness is unavailable. So again, the focus is, Your Honor, on the fact that it was the state's burden, that is clear federal law by Supreme Court that the state has the burden, and in no way or shape or form did the state, was that addressed, of whether or not the state actually met its burden on finding of unavailability. So proceeding to the facts quickly, whether or not the witness was unavailable is a mixed question of law or fact, so it has not provided the presumption of correctness. The trial court or the court of appeals decision that the witness was in fact unavailable, that does not fall under the presumption of correctness. And it's clear from the, again, from the court of appeals decision that they didn't even determine that it was a factual question. Because again, using the state court standard of review, if they would have determined, or if they were analyzing the trial court's decision of unavailability as a factual determination or a factual finding, then they would have used the clear air standard. They didn't use that standard, so it's not a factual finding. I think the way the state courts handled this in the way that they did, both the state trial court and the state court of appeals, had to do with the fact that the facts regarding the witness's unavailability were unfolding right there in the courtroom, and that the judge was observing the deterioration of the witness and interviewed her himself. I think it was a male judge. I'm not sure. And made the determination based on evidence that was unfolding before the judge's eyes. So there was nothing the state needed to do in terms of a proffer of unavailability to carry its burden. It was all happening in real time in the courtroom. It was, Your Honor. And the judge had managed the situation for the duration of the trial, including a four- or five-day recess while the witness was in the hospital. So to focus on the government's burden here is, or the state's burden here, is just a mistake, I think, in terms of the kind of unavailability that we're dealing with in this case. And I appreciate that, Your Honor, and respectfully, it's also what the witness actually said herself. Well, right, and the judge evaluates the situation in real time, and it's not inappropriate for the court of appeals to review those determinations for abuse of discretion. This is not the kind of unavailability that consists of, you know, inability to locate a subpoenaed witness where the government would actually have to put in proofs about that. It's all happening in real time during the course of the trial. And it did, but the witness was only asking for a few minutes. Even to the witnesses, to the judge's answer to her question. But she had been hospitalized for five days with a possible stroke. Yes, according to the witness's testimony, she just got out of the hospital on that Saturday leading up to the trial. But again, the witness was… Well, right, the trial had to be interrupted because of her hospitalization and delayed for five days. That is correct, Your Honor. Right, so that history is important to the trial judge's determination of unavailability. But even with that, the witness asked for a few minutes. The witness asked, indicated that if she got some seven up, and if she got her thumbs out of her purse, that she would be ready to go in a few minutes, that she could go back out and testify in a few minutes. The record is clear. She never got her thumbs that she had requested, that the witness had requested. She never got her seven up. She just was immediately declared unavailable, and we moved on. Your Honor, I see that my time is up. Thank you. Thank you. Mr. Coby. May it please the Court. The State Court reasonably applied Federal Confrontation Clause jurisprudence. The State Court reasonably determined that the witness was unavailable and that the petitioner had had the opportunity for cross-examination at the previous trial. The Court reasonably determined that presenting the witness's previous testimony would not violate his confrontation rights. The State Court properly identified controlling federal precedent, which is Crawford v. Washington, looked at the two issues, whether the witness was unavailable and whether the defendant had an opportunity to cross-examine the witness at a previous trial or deposition, found both of those were present, and so that it was proper to present the previous testimony. This was a witness who the Court had already continued the trial for five days because she was hospitalized. I will mention that all the parties there, even defense attorney, agreed that she was unavailable to testify, unable to testify due to her illness that day. What defense counsel was arguing at trial was that a mistrial should be declared and that this should be reset for a different time. In nowhere did anybody that was there observing the witness think that she was going to be able to testify within a few minutes. The way this unfolded, all the parties, everybody that was involved, said she couldn't testify that day and there was no indication that she would be better any time soon. And the mistrial motion was based on the importance of this witness to the prosecution's case. Correct. So there's clearly a serious question about harmfulness if this transcript was wrongly admitted under Crawford. Perhaps. But I think one thing important to remember in that regard is the assumption that she would be a better witness for the defense if she testified live as opposed to through a testimony. The defense counsel had cross-examined her extensively. In fact, her cross-examination was longer than her direct testimony at the first trial. Right, but we don't try murder cases on paper in this country. And the key witnesses in this case testified on paper.  Mr. Barraza and Ms. Timmerman. Correct. And that's pretty extraordinary. I agree, Your Honor. There's no doubt about that, that it is extraordinary. But the weight of the evidence, even the defendant's own testimony, wasn't very exculpatory. So all the other witnesses corroborated these two witnesses that were presented by paper. And the defendant's own explanations were not believable. But of course, even to get to harmlessness, this court would have to find that the state court unreasonably applied clearly established federal law or unreasonably determined the facts, which neither is present in this case. Because the state court properly applied federal law, we ask that you affirm the district court's decision. Thank you. Thank you. Mr. Brown, your time had expired, but if you have something further, you can have an extra minute. Thank you, Your Honor. If I may just address the harmlessness aspect of it. Again, we only get there if we get through the D1 or the D2 analysis. But typically when we engage in harmlessness, it's a hypothetical or it's speculation of what we think the jury would be thinking or whether or not we think that this violation affected the jury's determination. This case, we have it in the record. We don't have to speculate. We don't have to engage in a hypothesis. The exact same trial occurred a month before when Ms. Timmerman testified live. Ms. Timmerman testified. Her testimony was corroborated by that of Mr. Peraza, corroborated by other witnesses that testified in the trial. And at that trial, Mr. Berkman was found not guilty of murder. Ms. Timmerman's testimony is that Mr. Berkman admitted to her that he slit the gentleman's throat. The jury clearly said it wasn't credible. But the only difference between the first trial and the second trial is that a deputy prosecuting attorney pretended to be Ms. Zimmerman and read in her trial testimony. And it was only then that Mr. Berkman was found guilty of the felony murder. Based upon my arguments and the facts of the case, respectfully pray that this court reverse the decision of the district court in order that a writ issue conditioned on a new trial. Thank you very much. All right. Thank you very much. And, Mr. Brown, I believe you were appointed to take this case, were you not? I was not, Your Honor. Oh, you were not. Okay. I thought you were an appointed counsel. Thank you for your efforts on behalf of your client. Absolutely. Thanks to the State Council as well. The case is taken under advisement and the court will be in recess.